**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Rae Moore-White,<br><br>    Plaintiff,<br><br>vs.<br><br>Fann Contracting, Inc.,<br><br>    Defendant. | No. CV-09-8077-PCT-NVW<br><br>**ORDER** |

On May 6, 2009, Plaintiff Michael Rae Moore-White sued Defendant Fann Contracting, Inc. ("Fann"), alleging discrimination in violation of Title VII and the Age Discrimination in Employment Act ("ADEA"). Now before the Court are the parties' cross-motions for summary judgment. (Doc. ## 64, 68.) Because Fann's motion is granted in its entirety, the Court does not reach the merits of Moore-White's untimely motion, which is summarily denied. However, the Court has considered the evidence submitted with Moore-White's motion to the extent it is relevant to Fann's motion.

**I.    Legal Standard for Summary Judgment**

Summary judgment is warranted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce sufficient evidence to persuade the Court that there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Conversely, to defeat a motion

for summary judgment, the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the governing law, and a factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production under Rule 56(c) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1105-06; *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).

When the moving party has carried its burden under Rule 56(c), the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.* The nonmoving party's evidence is presumed to be true and all inferences from the evidence are drawn in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987). If the nonmoving party produces direct evidence of a genuine issue of material fact, the motion for summary judgment is denied. *Id.*

## II.     Undisputed Facts[1]

Fann is an Arizona-based highway and heavy construction contractor whose services include road building, environmental cleanup, and subdivision and commercial site development. In October 2006, pursuant to a prime contract with the U.S. Department of Transportation's Federal Highway Administration ("FHA"), Fann commenced a roadway construction project on Highway 273/Big Lake Road near Springerville, Arizona. The terms of the contract required both the FHA and Fann to provide independent quality control oversight of the project. Therefore, the FHA subcontracted with HDR, Inc. ("HDR") and Fann subcontracted with MACTEC Engineering and Consulting, Inc. ("Mactec") for the provision of quality control inspectors.

Fann and Mactec are separately owned and managed. The two companies maintain separate workforces and have no control over the other's decisions with respect to the hiring, compensation, assignment, evaluation, promotion, discipline, or discharge of its employees. Pursuant to the terms of the subcontract, Mactec was to furnish its own labor, materials, tools, supplies, equipment, facilities, supervision, and administration for purposes of fulfilling its obligations under the subcontract. Therefore, Mactec was responsible for ensuring the occupational health and safety of its employees, complying with all applicable employee wage and hour laws, paying all social security, unemployment compensation, and other employee-related taxes, and carrying worker's compensation insurance for all of its inspectors.

Plaintiff Moore-White was one of the inspectors assigned to the Big Lake project by Mactec. When Mactec hired her in June 2007, she was required to complete new-hire paperwork and attend an orientation. Fann, on the other hand, did not require her to

---

[1] To the extent Moore-White has failed to dispute one or more of Fann's statements of fact, those facts are deemed admitted. *See* LRCiv 56.1(b). Furthermore, where responses or additional facts in her opposing statement of facts fail to refer to admissible portions of the record, those statements are not considered. *See id.*

- 3 -

complete any paperwork or orientations prior to the commencement of her work on the project. While on the Big Lake site, Moore-White remained a Mactec employee, receiving her compensation and employment benefits solely from Mactec. Though she received some guidance from Fann employees as to where inspections were needed, her duties and responsibilities were delineated by David Burton, her senior supervisor at Mactec. In performing her duties, she used Mactec tools, supplies, and equipment. When she had questions, she consulted HDR inspectors or individuals employed directly by the FHA.

In or around August 2007, Fann Project Manager David Gregson and Fann Superintendent Isidro Torres began to experience what they perceived as problems with Moore-White's attendance and performance. When their complaints to Burton went unaddressed, they asked Burton to remove Moore-White from the project. Burton declined, opting instead to inform her of the complaints. To alleviate concerns with her tardiness, he also directed her to sign in with Fann each day "just to make them happy." At no point was she disciplined, demoted, suspended, or discharged by either Fann or Mactec. Nor was she formally evaluated by Fann. Though her written Mactec performance evaluation reflects Fann's concerns about her "understanding of responsibilities," the evaluation was completed solely by David Burton, her Mactec supervisor, and refers to Fann as a client. The overall evaluation was "very good".

In December 2007, the project was postponed due to poor weather conditions. Before it resumed in April 2008, Moore-White voluntarily terminated her employment with Mactec.

**III. Analysis**

Title VII prohibits employers from discriminating against individuals with respect to compensation, terms, conditions, or privileges of employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). The ADEA, which tracks the language of Title VII, prohibits employers from discriminating on the basis of age. *See* 29 U.S.C. § 623(a). Because the substantive provisions of the ADEA were derived

from Title VII, interpretations of Title VII apply "with equal force" to the ADEA. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Association of Mexican-American Educators v. California*, 231 F.3d 572, 604 n.3 (9th Cir. 2000).

To be subject to Title VII or the ADEA, an employer must generally have the statutorily-required minimum number of employees. *See* 42 U.S.C. § 2000e(b) (minimum of fifteen employees for Title VII); 29 U.S.C. § 630(b) (minimum of twenty employees for the ADEA); *see also Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 928-29 (9th Cir. 2003). However, a claim is not necessarily cognizable merely because the defendant meets the statutory definition of "employer". *Id.* at 929. There must also be some employment connection between the plaintiff and the employer-defendant. *See Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir. 1980). That connection may be direct, as where the defendant solely or jointly employed the plaintiff at the time the conduct occurred, or indirect, as where the defendant's conduct interfered with the plaintiff's employment opportunities with another employer. *See id.* at 883 n.3 (briefly mentioning interference with plaintiff's employment opportunities with another employer); *see also EEOC v. Pac. Mar. Ass'n*, 351 F.3d 1270, 1274 (9th Cir. 2003) (discussing both interference with plaintiff's employment opportunities and joint employment).

Here Fann could not have been Moore-White's sole employer because the undisputed facts very clearly indicate that Moore-White was employed by Mactec at all times relevant to this action. Mactec hired her in June 2007, at which point she was required to complete new-hire paperwork and attend an orientation. Mactec assigned her to the Big Lake project and paid her compensation and employment benefits throughout the project.

Nor was Fann a joint employer of Moore-White along with Mactec. Whether a joint employment relationship exists depends on the "economic realities" of a given relationship. *Id.* at 1275. Relevant factors include but are not limited to: (1) the defendant's right to hire, fire, or discipline the plaintiff, (2) the defendant's control over

the plaintiff's pay rate, (3) the degree of control over the manner in which the plaintiff's work is to be performed, (4) the permanence of the working relationship, and (5) whether the service rendered is an integral part of the defendant's business. *Id.* at 1275-76.

Moore-White was assigned to Fann's Big Lake project by Mactec. Fann had no right to hire, fire, or discipline Moore-White, as is evident from its unsuccessful attempt to have her removed from the project and the fact that it required no new-hire paperwork or orientations prior to the commencement of her work on the project. Fann also had no control over her formal performance evaluation, which referred to Fann only as a client. The terms, rate, and payment of Moore-White's compensation were controlled solely by Mactec, who was also entirely responsible for paying her social security taxes, unemployment compensation, and worker's compensation insurance premiums, and for providing the tools, supplies, and equipment necessary for Moore-White to do her job. Though she received some guidance from Fann employees as to where inspections were needed, Fann had no control over the manner in which she performed the substance of her quality control duties, which, by nature, were independent. When she had questions, she consulted HDR inspectors or individuals employed directly by the FHA. The working relationship between Moore-White and Fann was temporary in nature and necessary only because Fann was not in the business of providing quality control oversight. If anything, Moore-White's relationship with Fann was that of an independent contractor. Title VII, and therefore the ADEA, does not protect independent contractors. *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999) (citing *Lutcher*, 633 F.2d at 883).

Finally, the undisputed facts do not support any inference that Fann interfered with Moore-White's employment opportunities with Mactec or anyone else. The "interference" doctrine was first enunciated in *Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973), where the defendant-hospital operated a referral program in which private outside nurses were referred to patients at the hospital. *Id.* at 1339. The nurses were paid by the patients, not the hospital. *Id.* Because the hospital allegedly rejected the plaintiff-nurse on the basis that he was a male and the requesting patients were females,

- 6 -

the plaintiff sued the hospital under Title VII. *Id.* Noting that the purpose of Title VII is "to achieve equality of employment opportunities," the court concluded that the hospital could be liable under Title VII for discriminatorily interfering with the plaintiff's employment prospects with the requesting patients. *Id.* at 1342.

The doctrine has since been adopted by the Ninth Circuit. *See Association of Mexican-American Educators v. California*, 231 F.3d 572 (9th Cir. 2000) (allowing the plaintiffs, members of a minority class, to proceed against the state under Title VII where an allegedly discriminatory state-created test used to qualify applicants for public school positions prevented plaintiffs from entering into employment relationships with the public schools); *Gomez v. Alexian Bros. Hosp.*, 698 F.2d 1019 (9th Cir. 1983) (allowing the plaintiff, a doctor of Hispanic ancestry, to proceed against a hospital under Title VII where the hospital's alleged race-based rejection of a contract proposal submitted by AES, the doctor's employer, denied him the opportunity to serve as AES director of the proposed project).

Unlike the defendants in *Sibley*, *Ass'n of Mexican-American Educators*, and *Gomez*, whose discriminatory practices clearly interfered with the plaintiffs' prospective employment relationships or employment opportunities, Fann's conduct had no impact whatsoever on Moore-White's employment status or opportunities with Mactec. Because Moore-White was already a Mactec employee, there was no interference with a prospective employment relationship with Mactec. Furthermore, as a current employee, she was never disciplined, demoted, suspended, or discharged by Mactec. There is also no evidence that Fann's conduct caused her to lose a promotion or other employment opportunity with Mactec. Her only formal performance evaluation following the Big Lake project was "very good". Nor has she pled or proved any facts suggesting that Fann interfered with her employment relationship with any other employer.

There being no sufficient employment connection between Fann and Moore-White, Moore-White's Title VII and ADEA claims against Fann cannot stand.

1  IT IS THEREFORE ORDERED that Defendant Fann Contracting, Inc.'s Motion for Summary Judgment (doc. # 64) is granted.

IT IS FURTHER ORDERED that Plaintiff Michael Rae Moore-White's Motion for Summary Judgment (doc. # 68) is denied.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant and that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 29th day of April, 2010.

*/s/ Neil V. Wake*
Neil V. Wake
United States District Judge